UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PHILLIP E. BOLING,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-10-3037-CI

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 19.) Attorney Thomas Bothwell represents Phillp E. Boling (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 6.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant’s Motion for Summary Judgment, **DENIES** Plaintiff’s Motion for Summary Judgment and directs entry of judgment for Defendant.

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and for Supplemental Security Income (SSI) on August 30, 2006. (Tr. 11; 105.) He alleged an onset date of June 1, 2006. (Tr. 105; 110.) Plaintiff asserted he is disabled due to problems with his back, neck, suicidal thoughts, bipolar disorder, and high blood pressure. (Tr. 110.) His claim was denied initially and on reconsideration. (Tr. 53; 58.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on April

16, 2009, before ALJ Richard Say. (Tr. 21-48.) Plaintiff, who was represented by counsel, and vocational expert Hanoch Livneh testified at the hearing. (Tr. 39-47.) The ALJ denied benefits on May 13, 2009. (Tr. 11-19.) Later, the Appeals Council denied review. (Tr. 1-3.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 40 years old with a seventh grade education and limited reading, writing and mathematical abilities. (Tr. 26-28.) He had just been released from jail after violating a no-contact order and was temporarily staying with a friend. Sometimes he lived in his car. (Tr. 27-28; 30.) Plaintiff has past work experience as a truck driver. (Tr. 39; 117.) He testified that he stopped working because he cannot deal with people, and he wants to commit suicide. (Tr. 29.) He also testified that he has lost interest in doing anything, he lost 38 pounds in a six-month period because he was not interested in eating, and he hears voices in his head. (Tr. 33-34.) In both May and June of 2006, Plaintiff attempted suicide by overdosing on pills. (Tr. 157; 164.) Plaintiff's wife reported that prior to one of the suicide attempts, Plaintiff used $250 per day worth of methamphetamine. (Tr. 181; 245.) Plaintiff denied drug use, but the hospital drug screen was positive for amphetamines. (Tr. 186.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.

1987).

**SEQUENTIAL EVALUATION PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 1, 2006, the alleged onset date. (Tr. 13.) At step two, he found Plaintiff has the severe impairments of bipolar disorder and anti-social disorder. The ALJ found Plaintiff has the nonsevere impairments of polysubstance abuse, in remission, and back pain and hypertension. (Tr. 14.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (Tr. 16.) The ALJ found Plaintiff has the residual functional capacity that included no exertional limitations, but included a postural limitation of no more than occasional crouching and kneeling. (Tr. 18.) The ALJ found that Plaintiff could "do simple tasks when not engaging in drug and alcohol abuse" and that Plaintiff works best away from the public with limited, superficial interaction with co-workers. (Tr. 18.) The ALJ also found that Plaintiff could not perform past relevant work. (Tr. 19.) The ALJ concluded that considering Plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy

that the Plaintiff can perform. (Tr. 19.) For example, the ALJ found Plaintiff is capable of performing work as a janitor, laundry worker, and produce sorter. (Tr. 20.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and is free of legal error. Plaintiff contends that the ALJ erred by: (1) finding Plaintiff not credible; (2) failing to properly weigh the medical evidence from Philip Rodenberger, M.D., Deborah Blane, M.S. LMHC, and Dick Moen, MSW; and (3) presenting an incomplete hypothetical.

**DISCUSSION**

**A. Credibility.**

Plaintiff argues that the ALJ erred by finding Plaintiff's testimony about the severity of his symptoms not credible. (ECF No. 14 at 18.) When the ALJ finds a claimant's statements as to the severity of impairments, pain, and limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). If no affirmative evidence exists that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find the claimant has produced objective

medical evidence of an underlying “impairment,” and that the impairment, or combination of impairments, “could reasonably be expected to produce pain or other symptoms.” *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986). Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant.

In evaluating credibility, the ALJ may consider an unexplained failure to follow treatment recommendations and testimony by the claimant “that appears less than candid.” *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Also, the ALJ may consider the lack of consistent treatment, or an “unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment” can cast doubt on a claimant’s sincerity. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

In this case, the ALJ found Plaintiff’s testimony was not entirely credible. As the ALJ noted, the record reveals Plaintiff was inconsistent in providing certain facts. For example, Plaintiff testified he had been sober since October 2007, but in August 2008, he admitted to a physician that he had last used amphetamines six months prior, or in February 2008. (Tr. 31-32; 326.)

Also as found by the ALJ, the record reveals that Plaintiff tends to exaggerate his symptoms. For example, Plaintiff’s discharge summary by Gregory Sawyer, M.D., on May 11, 2006, following a suicide attempt indicates that his MMPI test was invalid due to “extreme over-reporting.” (Tr. 203.) Plaintiff was described as “a bit over dramatic.” (Tr. 197.) Additionally, Philip Rodenberger, M.D., noted on August 16, 2006, that Plaintiff “does not appear psychotic to the extent that he reports psychotic symptomatology.”

(Tr. 245.)

The ALJ also cited Plaintiff's failure to follow up with mental health care after January 2008 as an additional factor he relied upon in discrediting Plaintiff. Failure to follow a prescribed treatment may undermine a plaintiff's credibility. "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p.

In mental health cases, however, the credibility of a claimant with mental impairments cannot be impugned because he or she fails to seek treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); see also *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). In *Nguyen*, the plaintiff failed to seek mental health treatment for the first three years of his claimed disability period. The Ninth Circuit noted that such a delay was not a valid reason to reject plaintiff's claims of mental illness. *Nguyen,* 100 F.3d at 1465.

This case is distinguishable because Plaintiff sought mental health treatment on multiple occasions, but he failed to consistently attend appointments and take prescribed medication. For example, Plaintiff's case was closed with CWCMH due to multiple failures to keep appointments. (Tr. 264.) Medical records from December 2006 indicate that Plaintiff's "mental status has been unstable partly due to the patient's noncompliance with consistent

psychiatric follow-up, discontinuing the medication on his own, not following through with treatment recommendations." (Tr. 377.)

Additionally, no treatment records exist for the time period between July 2007 and January 2008 when Plaintiff reported he had run out of medication. (Tr. 328-33.) Plaintiff next sought treatment eight months later in August 2008. (Tr. 321-24; 346-47.) At that time, Plaintiff admitted he had stopped taking his medication, and he agreed to take his medication faithfully for six months. (Tr. 346.) However, there are no records that Plaintiff sought or received any treatment after that visit.

The ALJ's determination that Plaintiff was less than credible is supported by "clear and convincing"[1] evidence.

**B. Medical Opinion Evidence.**

Plaintiff also argues that the ALJ erred by failing to provide valid reasons for rejecting the opinions of Plaintiff's treatment providers, specifically Dr. Rodenberger, therapist Blaine, and therapist Moen. (ECF No. 14 at 16.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can be rejected only for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043.

---

[1] *Lester*, 81 F.3d at 830.

Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, and the source's specialization. *Id.*

Relevant factors in evaluating a medical opinion are the amount of evidence supporting the opinion and the quality of the explanation provided in the opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004). A medical opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. An ALJ does not need to discuss all the evidence presented, but the ALJ must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

**1. Philip D. Rodenberger, M.D.**

Plaintiff contends that the ALJ failed to mention both Dr. Rodenberger's opinion and therapist Blaine's opinion, and therefore

committed reversible error. (ECF No. 14 at 16.) In analyzing Plaintiff's impairments, the ALJ relied upon Dr. Rodenberger's bipolar diagnosis, and the need to rule-out a drug-induced mood disorder. (Tr. 14-15.) As the Commissioner points out, Dr. Rodenberger's consistent GAF assessments of 60-65 indicated Dr. Rodenberger believed Plaintiff had mild to moderate difficulties. (Tr. 245, 252, 335, 368, 369, 370.) A GAF score of 60, which indicates only moderate functional difficulties, is not consistent with disabling limitations. *See Tagger v. Astrue*, 536 F.Supp.2d 1170, 1173 n.6 (C.D. Cal. 2008) ("A GAF of 51–60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)'") (quoting DSM–IV at 34).

Plaintiff complains that the ALJ erred by failing to address two forms bearing Dr. Rodenberger's signature: (1) an undated TANF form indicating Plaintiff could not work full or part-time, and (2) an August 2, 2006, form that indicated Plaintiff was unstable. (Tr. 312-13.) The TANF form is undated, and thus of limited usefulness because it is impossible to determine the time frame implicated. The August 2, 2006, form indicated the evaluation was accurate for a 90-day duration. (Tr. 313.) This evidence does little to indicate that Plaintiff's current condition of instability would last beyond October 30, 2006. Moreover, the balance of Dr. Rodenberger's records indicate that he believed Plaintiff exaggerated his symptoms, and he attributed Plaintiff's issues to a character disorder. For example, in July 2006, Dr. Rodenberger indicated that the bipolar disorder was provisional, and he saw

"this man as being a very impulsive individual whose impulsivity probably ties into some form of character disorder." (Tr. 336.) In early August 2006, Dr. Rodenberger opined, "I think this gentleman is a bit more characterological, but I cannot rule out a major Axis I diagnosis, and therefore I will continue to treat him as somebody who is bipolar." (Tr. 252.) Finally, about one week later, Dr. Rodenberger asserted Plaintiff "does not appear psychotic to the extent that he reports psychotic symptomatology. I suspect he is an impulsive character with the Cluster "B" personality traits." (Tr. 245.) On the whole, Dr. Rodenberger's records indicate that he believed Plaintiff likely suffered from a character disorder, and his GAF ratings indicated he believed Plaintiff had moderate limitations.

On de novo review, the two forms completed by Dr. Rodenberger do not conflict with the ALJ's RFC. The information in these forms does not undermine the AJL's findings, and does not constitute significant probative evidence that was rejected. In light of the additional medical records from Dr. Rodenberger that indicate his assessment of Plaintiff's impairments as mild to moderate, the ALJ's failure to specifically address these two forms was not reversible error.

**2. Deborah Blaine, MS, LMHC**

Plaintiff contends that the ALJ's failure to address the March 2007 opinion from Deborah Blaine, MSW, was reversible error. Upon review of the entire record, it is apparent that this evidence was neither significant nor probative and therefore the failure to discuss it was not error.

In March 2007, Ms. Blaine completed a form that indicated

Plaintiff could not work and noted Plaintiff's moods were unstable because he had not consistently taken his medication. (Tr. 307-08.) Ms. Blaine estimated that Plaintiff's inability to work would last 9-12 months. (Tr. 308.) Ms. Blaine opined Plaintiff needed to consistently take medication and refrain from using illicit drugs. (Tr. 308.) "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Commissioner of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted).

Consistent with Ms. Blaine's March 2007 opinion, the record reflects that when Plaintiff takes prescribed medication, his condition improves. For example, Plaintiff was admitted in May 2006 for an attempted suicide. After three days in the hospital, the Plaintiff's progress was reported as "excellent." (Tr. 162.) Similarly, in late June 2006, Plaintiff was admitted for a second suicide attempt and after five days in the hospital, he had improved to the point that the attending physician described him as "a different person." (Tr. 168-69.)

Medication appeared to improve Plaintiff's symptoms, yet Plaintiff failed to consistently take the prescribed medication. Ms. Blaine's opinion was offered when Plaintiff had been without his medication for some time. The opinion that Plaintiff cannot work when he is unmedicated is not probative regarding whether he is disabled because conditions that can be remedied with medication are not considered disabling. *Warre,* 439 F.3d at 1006. The ALJ's failure to specifically address this evidence was not error.

**3.  Dick Moen, MSW**

Finally, Plaintiff argues that the ALJ failed to provide valid

reasons for giving no weight to Mr. Moen's August 19, 2009, assessment of Plaintiff. (Tr. 315-20.) Without providing citations to the record, Plaintiff asserts that Mr. Moen's findings of marked impairments are "well supported" by the record. (ECF No. 14 at 17.)

In this case, the ALJ gave four reasons for giving no weight to Mr. Moen's assessment: (1) Mr. Moen was not an acceptable medical source; (2) no evidence existed that Mr. Moen ever examined Plaintiff; (3) no medical signs or clinical findings exist to support the assessed limitations; and (4) the limitation levels were inconsistent with the medical evidence in the record. (Tr. 18.)

The regulations distinguish between opinions given by "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513, 416.913. "Acceptable medical sources" include "licensed physicians" and "licensed or certified psychologists." 20 C.F.R. §§ 404.1513(a)(1), (2); 404.913(a)(1), (2). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The opinion of an "acceptable medical source" is given more weight than the opinion of an "other source," 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996), except where the factors of 20 C.F.R. §§ 404.1527(d), 416.927(d) lead to a determination the "other source" should be given greater weight than an "acceptable medical source." SSR 06–3P. The ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1231–32. If the ALJ discounts the testimony of "other source" witnesses, the ALJ must give reasons that are "germane" to each witness. *Dodrill v.*

*Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  With a Masters in Social Work, Mr. Moen is an "other source" pursuant to the regulations.  20 C.F.R. §§ 404.1513(d), 416.913(d).

The ALJ provided germane reasons for discounting Mr. Moen's assessment that are  supported by the record.  (Tr. 317.)  Mr. Moen assessed Plaintiff with marked and severe impairments in the social factors.   For example, Plaintiff received marked impairment assessments related to the ability to relate appropriately with coworkers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the pressures of expectations of a normal work setting.  (Tr. 317.)  Additionally, Mr. Moen noted Plaintiff was off medication, and his bipolar disorder was "out of control."  (Tr. 317.)  However, Mr. Moen opined that even if the bipolar was stabilized, Plaintiff's rheumatoid arthritis would prevent him from working.  (Tr. 318.)

The record is ambiguous as to whether Mr. Moen examined Plaintiff in 2008 prior to completing the evaluation.   While Mr. Moen's name appears on Plaintiff's treatment plan,  it was electronically signed.   The electronic signature disclaimer indicates the signature means simply: "I have reviewed all of the problems and interventions described in this plan."  (Tr. 346.)  As a result, the AJL's conclusion that this assessment was completed more than one year after Plaintiff was last treated by the clinic is supported by the record.  (Tr. 18.)

The ALJ also found that no medical signs or clinical findings supported Mr. Moen's assessed limitations, and the limits were inconsistent with the record.   The Plaintiff responded that the assessed impairments were "well supported" by the record, but failed

to provide any citations. (ECF No. 14 at 17.) Contrary to the Plaintiff’s assertions, the record does not contain clinical findings by physicians that would support the assessed severe limitations. For example, the Psychiatric Review Technique assessment by Mary A. Gentile, Ph.D., dated October 31, 2006, found that Plaintiff had a drug-induced mood disorder, and he had mild and moderate functional limitations. (Tr. 284; 91.) This assessment was affirmed on April 2, 2007, by Jerry Gardner, Ph.D. (Tr. 314.) Moreover, Mr. Moen’s assessment that Plaintiff suffers from disabling rheumatoid arthritis is not supported elsewhere in the record by objective medical evidence. In sum, the ALJ provided germane reasons for giving no weight to Mr. Moen’s August 15, 2008, assessment.

**C. The Hypothetical.**

The Plaintiff argues that the ALJ provided an incomplete hypothetical. (ECF No. 14 at 19.) “In order for the testimony of a VE to be considered reliable, the hypothetical posed must include ‘all of the claimant's functional limitations, both physical and mental’ supported by the record.” *Thomas*, 278 F.3d at 956 (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., *Magallanes v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Copeland v. Bowen*, 861 F.2d 536, 540 (9th Cir. 1988). As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2001) (citing *Roberts v.*

*Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)); see also *Andrews,* 53 F.3d at 1043 (9th Cir. 1995)(although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

In his hypothetical to the VE, the ALJ described an individual of Plaintiff's age, education, background, with no exertional limits, but with mental health issues that caused him to be able to understand, remember and carry out only short, simple instructions. (Tr. 40.) The hypothetical also included that the person should not have interaction with the general public and occasional, superficial interaction with coworkers. (Tr. 40.) The VE found that Plaintiff could not return to his former work of driving a truck, but he could perform other jobs such as a janitor, laundry worker, or produce sorter. (Tr. 40-41.)

The ALJ's hypothetical limitations are supported by an October 31, 2006, Mental Residual Functional Capacity Assessment completed by Dr. Gentile. (Tr. 303-05.) The basis of Plaintiff's complaint is that the "improperly rejected limitations" were omitted from the ALJ's hypothetical. (ECF NO. 14 at 20.) Plaintiff contends that the limitations assessed by Mr. Moen should have been reflected in the RFC. (See Tr. 45-46.) As analyzed above, the limitations set forth by Mr. Moen were not supported by the record, and the AJL did not err in excluding those limitations from the hypothetical.

The ALJ's final RFC substantially reflects the mental limitations assessed by Dr. Ho. (Tr. 15; 295-300.) As stated in the regulations governing these proceedings, the RFC determination represents the most a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545, 416.945. The RFC

assessment is not a "medical issue" under the Regulations; it is based on all relevant evidence in the record, not just medical evidence. *Id.* Further, the Supreme Court has held explicitly that the ALJ is "responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities," in these proceedings. *Richardson*, 402 U.S. at 400; Andrews, 53 F.3d at 1039; SSR 96–8p. The final determination regarding a claimant's ability to perform basic work is the sole responsibility of the Commissioner. 20 C.F.R. § 416.946; SSR 96–5p (RFC assessment is an administrative finding of fact reserved to the Commissioner). Where, as here, ALJ's determination is a rational interpretation of the evidence, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097. Because the RFC reasonably reflects all limitations supported by the credible evidence, including Dr. Ho's assessment of Plaintiff's limitations, the Commissioner's RFC and step five findings that jobs exist in significant numbers that Plaintiff can perform are affirmed.

**CONCLUSION**

The Commissioner's denial of benefits is supported by substantial evidence and without legal error. Plaintiff did not meet his burden of proving that he is disabled. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(ECF NO. 19)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF NO. 13)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment

shall be entered for Defendant, and the file shall be CLOSED.

DATED December 28, 2011.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19